Golia, J.
(concurring only in the outcome of the preceding memorandum but disagreeing with the findings of the majority). In view of the Appellate Division, Second Department’s decision in Bensonhurst Real Estate v Helsam Realty Co. (1 AD3d 302 [2003]), I am now reluctantly constrained to concur with the other members of this panel.
However, because Mr. Ishay, the principal owner of the respondent corporations is a person of dubious veracity who employs deception to willfully avoid paying his taxes and manipulates the law to subvert the law, I am likewise constrained to voice my dissent in the opinions expressed by the majority.
The real problem in this case is that they overlook the true purpose of Mr. Ishay’s actions which was to utilize the provisions of the New York State statutes to defeat the purpose of such statutes so as to permit him to remain in possession through his various corporate entities, of which he is the principal, and exercise a valuable option to purchase the subject premises contained in the lease. Using the law to defeat the law should never be countenanced by any court.
Section 203-a of the New York State Tax Law provides a very detailed procedure whereby the Secretary of State is directed to issue a proclamation declaring an existing corporation to be dissolved upon receiving notice from the tax commission that such corporation has failed to pay and/or file tax returns for no less than the last two consecutive years. It also provides a window of protection for that corporation and prohibits anyone else from incorporating under the same or similar name for a period of three months.
Mr. Ishay is no stranger to that section in that he was the officer of approximately seven corporations that were dissolved by proclamation. He is also not a stranger to the section of the statute that provides that after three months of such proclamation the name of the dissolved corporation is available to be used as the name of a new corporation. Indeed he has filed for a *69 new Corporation, utilizing the exact same name as a previously dissolved corporation, no less than four times. In each of those instances the dissolved corporations were ones of which he was a principal owner.
In addition, Bensonhurst Real Estate, Ltd. failed to inform its bank of the dissolution inasmuch as it has continued to use the same bank account and checkbook that were issued to the prior dissolved corporation. This not only violated banking rules and corporation law, but also served to mislead any company with which it was doing business, as well as the public at large, into believing that the “original” corporation continued to exist to their detriment.
Mr. Ishay’s sister-in-law, Ms. Estelle Ishay, testified that Mr. Ishay owned several corporations and if “one store did [not] have funds, funds from another store’s account would be used to pay the bills . . . Henry Ishay would look at the bills and tell them which checks to write.” It is clear that Mr. Ishay treats his several corporations with their multiple identities that flicker in and out of existence as a single cash register to accumulate money and pay those whom he chooses. He apparently never chooses to pay his corporate taxes.
Mr. Philip Cohen, C.PA., testified that he had performed accounting work for Mr. Ishay and that Bensonhurst Real Estate, Ltd., in addition to failing to pay any state taxes, did not file federal tax returns from 1989 through 1999. He also testified that Mr. Ishay chose not to reinstate Bensonhurst Real Estate, Ltd. because it would cost a lot more money than forming a new corporation, and that Mr. Ishay had done the same thing with other corporations.
Despite that testimony, Mr. Ishay testified that he simply did not realize that he was creating new corporations while failing to pay any taxes for the existing ones. His incredible explanation was “I’m not a lawyer and I’m not an accountant. I’m a corporation going along.” The record does not address the issue as to whether or not he was similarly oblivious to the requirement that the corporations he ran were obligated to pay taxes and file tax returns.
It is clear to me that the veracity of Mr. Ishay’s testimony is very suspect and his willingness to pay any corporate taxes is nonexistent. I do not, however, predicate this writing solely upon Mr. Ishay’s apparent lack of candor nor his lack of desire to pay his taxes.
*70 It is uncontroverted that in 1989 Burger King Corp. and its former subtenant H.J.A. Holding Corporation (an Ishay company) placed Bensonhurst Real Estate, Ltd. (an Ishay company) into possession of the subject premises. Thereafter, on September 29, 1993, Bensonhurst Real Estate, Ltd. was dissolved by proclamation due to nonpayment (or nonfiling) of franchise taxes.
There is no evidence that either Burger King, as the holder of the net lease, or the petitioner, who is the owner of the building and subsequent holder of the net lease by assignment in 1998, was ever informed that the “original” Bensonhurst Real Estate, Ltd. had been dissolved in September of 1993. Some months later, Mr. Ishay formed a “new” corporation using the exact same name and utilizing the same checking account of the “original,” then defunct, Bensonhurst Real Estate, Ltd.
Inasmuch as the “new” Bensonhurst Real Estate, Ltd. continued to use the same checkbook and incorporated under the same name as the “original” Bensonhurst Real Estate, Ltd., there was no way for Burger King or the petitioner to know that the “new” Bensonhurst Real Estate, Ltd. was noi the “original.”
This action by Mr. Ishay bears repeating. He did not merely suffer the “forced” dissolution of his corporation for failure to pay his taxes as occurs with many small corporations. He willfully chose to not pay or file returns and when his corporation was dissolved by proclamation, he incorporated a “new” company with exactly the same name in order to willfully mislead his business associates, his bank, and the public.
It should be noted at this juncture that section 301 of the Business Corporation Law establishes rules concerning permissible names for corporations. Like section 203-a of the Tax Law, it addresses itself to preventing the confusion or fraud which may result from the use of the same or similar names of existing corporations. The “original” Bensonhurst Real Estate, Ltd. was not an existing corporation at the time. For if it was, he would not have been able to incorporate a “new” corporation under the same name. The clear import of this Business Corporation Law section, which limits the use of corporate names, is to protect the public and to prevent deception and confusion (see Matter of Jervis Corp. v Secretary of State of State of N.Y., 43 Misc 2d 185 [1964]).
It is inconceivable to me that the purpose of section 203-a of the Tax Law is to provide a vehicle by which a corporation can *71 choose not to pay its taxes, be dissolved by proclamation, thereafter reincorporate under the same name, and continue to fail to pay taxes and not be accountable for the “prior” corporation’s tax obligation. Nevertheless, that is exactly what was done by Mr. Ishay in the case of Bensonhurst Real Estate, Ltd. as well as several other corporations of which he was a principal.
Inasmuch as the “original” Bensonhurst Real Estate, Ltd. had become a subtenant pursuant to the agreement of April 13, 1989 and was thereafter dissolved by proclamation as of September 29, 1993, the lease terminated as of that date pursuant to paragraph 8.1 of the lease. Said paragraph provides that each of the following events constitutes a default or breach of lease: “(a) If lessee files a petition in bankruptcy, insolvency, dissolution or for reorganization or arrangement under the laws of the United States or of any state, or voluntarily takes advantage of any such law or act or is dissolved or makes an assignment for the benefit of creditors” (emphasis supplied).
Paragraph 8.1 further provides that in the event of a default under subparagraph (a), the term of the lease shall automatically terminate without additional notice to the lessee thereby creating a conditional limitation.
According to the clear language of paragraph 8.1, the subject lease automatically terminated on September 29, 1993 when Bensonhurst Real Estate, Ltd. was dissolved by proclamation.
In addition since Mr. Ishay chose to incorporate a new entity under the same name, he could not reinstate the “original” Bensonhurst Real Estate, Ltd. under its original name as it would be prohibited by both section 203-a of the Tax Law and section 301 of the Business Corporation Law. This created a dilemma for Mr. Ishay who is now seeking to exercise the option to purchase under the terms of the lease and thereby reap a windfall. What did he do to resolve this dilemma? The same thing he always does.
Subsequent to the commencement of the underlying action, and fearful that he might not be successful therein, Mr. Ishay dissolved the “second” Bensonhurst Real Estate, Ltd. Then by utilizing the provisions of Tax Law § 203-a, with which he is quite familiar, he reinstated the “original” Bensonhurst Real Estate, Ltd. The audacity of Mr. Ishay is apparently without bounds inasmuch as he would have been unable to reinstate the “original” Bensonhurst Real Estate, Ltd. had that name been taken by anyone other than himself. I note that in his attempt to enforce his right to exercise the valuable option to purchase *72 the premises and thereby obtain a substantial windfall, there is no indication as to whether he paid the taxes that were incurred by the “second” Bensonhurst Real Estate, Ltd. when he paid his back taxes attributable to the “original” Bensonhurst Real Estate, Ltd. These back taxes were not now too onerous compared to the windfall.
Taxes as an investment rather than an obligation is a unique concept.
Indeed, the sole function of a dissolved corporation is “winding up” the affairs of the corporation pursuant to section 1005 of the Business Corporation Law. It is not to continue to function in a willful manner to mislead and confuse the public and its business associates to their detriment.
I do not find that section 203-a of the Tax Law is applicable under the facts herein, inasmuch as Mr. Ishay began the reinstatement process under said law well after this proceeding was instituted, the lease already having been terminated pursuant to the conditional limitations contained therein.
The unclean hands of Mr. Ishay who manipulated the law to defeat the law is such that we should not sanction and reward those, who like Mr. Ishay, abuse the letter of the law. Certainly, this is a matter for the Legislature to address.
It is important to note that the cases cited by the majority are equally applicable to this writing. In addition, the penultimate holding of the majority that the fraud committed by the respondents as against the landlord, the bank and the public at large were “de minimis” is inconsistent with the facts as set forth herein. Indeed, the respondents’ acts were prejudicial to the landlord and the respondents’ bank, but most importantly they were prejudicial to the public for whom the laws of this state are written to protect. Clearly, if any acts were unreasonable and unconscionable, they were the willful acts of the respondents herein.
Pesce, PJ., and Rios, J., concur; Golia, J., concurs in a separate memorandum.